UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LYNNE L. VAN,

Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.

Civil No. 07-6042-HA

OPINION AND ORDER

HAGGERTY, Chief Judge:

Plaintiff Lynne Van seeks judicial review of a final decision by defendant Commissioner of the Social Security Administration denying her application for Supplemental Security Income (SSI) payments. This court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). After reviewing the record of this case and evaluating counsel's arguments, this court concludes that the Commissioner's decision must be reversed and this case remanded for an award of benefits.

**STANDARDS**

To establish eligibility for benefits, a plaintiff has the burden of proving an inability to engage in any substantial gainful activity (SGA) "by reason of any medically determinable physical or mental impairment" that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for benefits because of disability. 20 C.F.R. §§ 404.1520, 416.920; *see also Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

First, the Commissioner determines whether the claimant is engaged in SGA. If the claimant is so engaged, disability benefits are denied.

If not, the Commissioner proceeds to a second step and determines whether the claimant has a medical impairment that meets the regulatory definition of "severe." 20 C.F.R. § 404.1520(a). If the claimant lacks this kind of impairment, disability benefits are denied. 20 C.F.R. § 404.1520(c).

If at least some of the claimant's impairments are severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one or more impairments that the Commissioner has recognized to be so severe that they are presumed to preclude SGA. *See* 20 C.F.R. § 404.1520(d). These are listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments or the Listings). The Listings describe, for each of the major body systems, impairments which qualify as severe enough to be construed as *per se* disabling. 20 C.F.R. §§ 404.1525, 416.925; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). The claimant has the burden of producing medical evidence that establishes all of the requisite medical findings.

*Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005); *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). If the claimant's condition meets or equals one in the Listing of Impairments, the claimant is presumed conclusively to be disabled.

If the impairments are not presumed to be disabling, the Commissioner determines the claimant's residual functional capacity (RFC). A person's RFC is the most an individual could do in a work setting despite the total limiting effects of all the claimant's impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); Social Security Ruling (SSR) 96-8p.

The Commissioner then proceeds to the fourth step to determine whether the impairment prevents the claimant from engaging in work that the claimant has performed in the past. If the claimant is able to perform his or her former work, a finding of "not disabled" is made and disability benefits are denied. *See* 20 C.F.R. § 404.1520(e).

If the claimant is unable to perform work that he or she has performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, RFC, and work experience.

In this five-step framework used by the Commissioner, the claimant has the burden of proof at steps one through four. Accordingly, the claimant bears the initial burden of establishing his or her disability.

However, at the fifth step, the burden shifts to the Commissioner to show there are a significant number of jobs in the national economy that the claimant can perform given his or her RFC, age, education, and work experience. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).

If the Commissioner cannot meet this burden, the claimant is considered disabled for purposes of awarding benefits under the Act. 20 C.F.R. § 404.1520(f)(1). If the Commissioner

meets this burden, the claimant must be deemed not disabled for purposes of determining benefits eligibility. 20 C.F.R. §§ 404.1566, 404.1520(g).

The Commissioner's decision must be affirmed if it is based on proper legal standards and its findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is more than a scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997). The Commissioner's denial of benefits is upheld even if the evidence is susceptible to more than one rational interpretation, as long as one of the interpretations supports the decision of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002); *Andrews*, 53 F.3d at 1039-40.

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Tackett*, 180 F.3d at 1098. The Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld in instances in which the evidence would support either outcome. *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003); *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998).

**BACKGROUND**

This case has a lengthy and complex procedural history. Plaintiff has filed four applications for disability benefits: in May 1992, December 1997, January 1999, and June 2002. She alleged disability due to various ailments, including fibromyalgia, arthritis, carpal tunnel syndrome, asthma, chronic obstructive pulmonary disorder, depression, and reflect sympathetic dystrophy.

In September 1993, an administrative law judge (ALJ) issued a decision finding plaintiff not disabled. Plaintiff did not appeal this decision, but subsequently filed additional SSI applications.

Plaintiff filed additional applications for SSI benefits in December 1997 and January 1999. These applications were denied initially and upon reconsideration. A hearing was held on March 13, 2001, in front of ALJ Jean Kingrey. The ALJ issued a decision finding plaintiff not disabled; plaintiff's request for review was denied by the Appeals Council. Plaintiff filed a complaint for judicial review under 42 U.S.C. § 405(g).

In July 2003, the district court remanded the case to an ALJ "solely to evaluate the interplay between plaintiff's mental and physical condition and whether Dr. Morris fully considered plaintiff's mental condition in his diagnosis." Transcript of Record (hereinafter "Tr.") 928.

While plaintiff's earlier applications were still pending, plaintiff filed another application on June 17, 2002. It was denied at the initial level.

On February 8, 2006, ALJ Kingrey held another hearing. The ALJ heard testimony from: plaintiff, represented by counsel; Frank D. McBarron, M.D., and Susan Dragovich, Ph.D., medical experts; and a vocational expert (VE). On December 22, 2006, the ALJ issued a decision finding plaintiff not disabled. This decision covered both the remanded applications and the 2002 application.

This decision became the Commissioner's final decision upon the Appeals Council's denial of review. *See* 20 C.F.R. §§ 404.981, 416.1481, 422.210. Plaintiff seeks judicial review of this decision.

Specific medical facts and background will be addressed as required by the parties' legal arguments.

**SUMMARY OF THE ALJ'S FINDINGS**

At Step One of the five-step analysis used by the Commissioner, the ALJ found that plaintiff has not engaged in SGA since the alleged onset of her disability. Tr. 854, Finding 1.

At Step Two, the ALJ found that plaintiff had severe impairments, including a history of bilateral carpal tunnel syndrome; chronic obstructive lung disease; degenerative disc disease; somatoform chronic pain disorder; adjustment disorder; post-traumatic stress disorder (PTSD); depressive disorder; and personality disorder not otherwise specified. Tr. 854, Finding 2.

At Step Three, the ALJ found that plaintiff's impairments, individually and in combination, did not meet or equal the requirements of a listed impairment. Tr. 854, Finding 3.

The ALJ found that plaintiff had the RFC to sit, stand, and walk for six hours in an eight hour day; lift twenty pounds occasionally and ten pounds frequently; she should only occasionally climb, balance, stoop, kneel, crouch, or crawl; she should avoid ropes, ladders, or scaffolding; she should have no exposure to high levels of air pollutants; and she is limited to simple routine tasks, with infrequent public contact, and no close coordination with co-workers. Tr. 854-55, Finding 4.

At Step Four, the ALJ applied the RFC and determined that plaintiff was unable to perform any past relevant work. Tr. 880, Finding 5.

At Step Five, the ALJ applied the RFC and determined that plaintiff could perform jobs existing in significant numbers in the national economy. Tr. 880, Finding 9. The VE testified

that plaintiff could perform the following jobs: touch-up screener, small products assembler, and semi-conductor assembler. *Id.*

**DISCUSSION**

Plaintiff contends that this court should reverse the Commissioner's final decision and remand for payment of benefits because the ALJ: (1) ignored the findings of the district court and (2) improperly discounted the opinion of James Morris, M.D. Plaintiff also argues that the ALJ reopened plaintiff's 1992 application, and therefore, the court should award additional retroactive benefits.

**1. Dr. Morris**

The opinion of Dr. Morris, a treating physician who has repeatedly concluded that plaintiff is disabled, is the crux of this case. In the 2001 decision denying plaintiff benefits, the ALJ provided several reasons for rejecting Dr. Morris' opinion: (1) his conclusions were inconsistent with plaintiff's range of activities; (2) his opinion was inconsistent with the opinion of Drs. Willkens ("Wilkins" in the decision), Johnson, and Kehrli; (3) his treatment notes were contradictory because he noted plaintiff was sometimes doing well; (4) one of his opinions used language similar to a letter written by plaintiff's attorney; (5) his opinion was unsupported by objective evidence, (6) his opinion was conclusory and did not specify the bases on which it was made, (7) the disability determination is reserved to the Commissioner; and (8) the psychological assessment exceeded the scope of his expertise. All of the proffered reasons for discounting Dr. Morris' opinion were rejected by the district court. Tr. 915-23.

Although the 2003 district court decision faulted the ALJ's treatment of Dr. Morris, it affirmed the ALJ's finding that plaintiff was not credible regarding her symptoms. The district

court also highlighted the opinions of several psychologists, including: Dr. Teri Strong's opinion that plaintiff exaggerated her problems in a plea for help; Dr. David Northway's diagnosis of pain disorders with psychological factors; and Dr. Ron Lechnyr's opinion that plaintiff exaggerated her symptoms. Tr. 922-23.

The district court remanded the case to the ALJ "solely to evaluate the interplay between plaintiff's mental and physical condition and whether Dr. Morris fully considered plaintiff's mental condition in his diagnosis." Tr. 928. Consistent with that directive, plaintiff's attorney Robert Baron subsequently asked Dr. Morris if he had considered plaintiff's mental condition prior to formulating his diagnosis that she was disabled. Doctor Morris responded indicating that he had. Tr. 1126. Furthermore, Dr. Morris indicated that the psychological evaluations did not affect his opinion because "[s]erial office evaluations, testing, examination to [sic] response to treatment over time have established consistent behavior and consistent response." Tr. 1128. Although Dr. Morris acknowledged that plaintiff's "pain symptoms may be unconsciously amplified by psychological distress," he wrote that it "remains my opinion that [plaintiff] is medically disabled by the combination of her conditions and not employable." Tr. 1124.

Despite assurances that Dr. Morris' opinion was unaffected by plaintiff's mental condition, his opinion was rejected a second time in the ALJ's 2006 decision. The ALJ observed that:

> [t]here is no evidence that [Dr. Morris] had any of the many psychological records prior to Mr. Baron having provided them after the court remand. Little weight is given to Dr. Morris' statements. While he may have "considered" her mental condition in making his diagnosis he did not have the record information on this issue until after he made his diagnosis and rendered his repeated opinion.

Tr. 868.

The court concludes that it is immaterial when Dr. Morris received the psychological evaluations. In May 2001, the date of ALJ Kingrey's original decision, Dr. Morris held the opinion that plaintiff was disabled. In May 2005, having reviewed the psychological evaluations, Dr. Morris reiterated his opinion that plaintiff was disabled. And in December 2006, the date of ALJ Kingrey's second decision, Dr. Morris' opinion was apparently unchanged. In short, Dr. Morris has continuously opined that plaintiff is disabled since their initial meeting in 1998, despite knowledge of what the district court termed "plaintiff's apparent propensity to exaggerate her physical symptoms." Tr. 928.

As a treating physician, the opinion of Dr. Morris cannot be lightly disregarded. However, "it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989)). The ALJ may reject the contradicted opinion of a treating or examining physician by stating specific and legitimate reasons, and may reject an uncontradicted treating or examining physician opinion by providing clear and convincing reasons, supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *see also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1995) (ALJ must provide clear and convincing reasons for rejecting uncontroverted expert opinions, and must provide specific, legitimate reasons for rejecting controverted expert opinions); *see also Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (clear and convincing reasons must be provided to support rejection of a treating physician's ultimate conclusions).

Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than a reviewing physician's conclusions. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); *Lester*, 81 F.3d at 830. However, an ALJ must give weight not only to the treating physician's clinical findings and interpretation of test results, but also to the doctor's subjective judgments. *Lester*, 81 F.3d at 832-33 (citing *Embrey*, 849 F.2d at 422).

The ALJ's 2001 and 2006 decisions contain nearly identical reasons for rejecting the opinion of Dr. Morris. Inasmuch as these arguments have already been addressed and dismissed by the 2003 district court opinion, they need not be reexamined. However, this court must still determine whether the 2006 decision contains new, legally sufficient reasons for rejecting the opinion of Dr. Morris.

The ALJ again asserted in the 2006 decision that Dr. Morris' opinion was inconsistent with those of other medical professionals. This is only partially true.

Subsequent to the 2001 decision, plaintiff was examined by Dr. Kurt Brewster. Doctor Brewster provided a functional assessment of plaintiff that was not overly restrictive. Tr. 867 ("Dr. Brewster recommended that [plaintiff] be limited to standing, or walking for two hours a day. She could frequently lift 10 pounds. She had only occasional limitations on reaching, and handling or feeling were not limited."). However, Dr. Brewster also opined that plaintiff "does perceive pain that to her is subjectively limiting." Tr. 1039.

Like Dr. Brewster, every medical professional has acknowledged that plaintiff's symptoms could stem from a combination of physical and mental causes. None have accused plaintiff of malingering or asserted that the pain she claims to experience is neither physical nor

mental. Rather, as Dr. Brewster pointed out: "Physical examiners have concluded that claimant is suffering from psychological problems while those conducting mental capacity exams assert she has problems of a physiologic[al] nature." Tr. 1039.

Although there is considerable disagreement as to the source of plaintiff's complaints, no medical professional has directly contradicted Dr. Morris' opinion that plaintiff is disabled. For instance, Dr. Robert Willkens "disagreed with a diagnosis of fibromyalgia" but did not doubt that plaintiff was subjectively experiencing pain, diagnosing a somatoform-type disorder. Tr. 863. Thus, it is not clear that Dr. Morris' opinion is actually controverted by another medical professional.

Assuming *arguendo* that Dr. Morris' opinion is controverted, the ALJ has not provided specific and legitimate reasons, supported by substantial evidence in the record, for rejecting Dr. Morris' opinion.

The ALJ noted that "Dr. Morris' opinions are not supported by appropriate evidence, and instead are based in the acceptance of the reports of an unreliable patient." Tr. 879. An ALJ may properly disregard a medical opinion, even the opinion of an examining source, which is based on the self-reporting of a properly discredited claimant. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). This court already ruled, in its 2003 decision, that plaintiff's testimony regarding her symptoms is unreliable because of her "apparent propensity to exaggerate her physical symptoms." Tr. 928.

Doctor Morris' opinion, however, is not based solely on the self-reporting of the plaintiff but on "[s]erial office evaluations, testing, [and] examination to [sic] response to treatment over time." Tr. 1128. Since it is based on both objective testing and a lengthy treating relationship,

Dr. Morris' evaluation is not undermined by plaintiff's acknowledged unreliability. This conclusion is bolstered by the fact that Dr. Morris reviewed the psychological evaluations. Although Dr. Morris knows that plaintiff's self-reporting is discredited, it remains his opinion that plaintiff is disabled. The court finds that plaintiff's unreliability does not constitute a specific and legitimate reason, supported by substantial evidence in the record, for disregarding the opinion of Dr. Morris.

The ALJ asserts in both the 2001 and 2006 decisions that plaintiff's "wide range of activities" bely a finding of disability. Tr. 879. In the last several years, plaintiff's activities have included: walking for thirty minutes, watching TV and reading, doing art work, pulling weeds, and crocheting. Tr. 874. Internal inconsistencies within a physician's report constitute relevant evidence in judging the weight to attribute to that report. *Morgan v. Apfel*, 169 F.3d 595, 603 (9th Cir. 1999). *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). In its 2003 decision, however, this court accepted that plaintiff experienced "waxing and waning" pain symptoms. Tr. 918. Thus, periods of activity are not incompatible with a finding of disability. Furthermore, knowledge of these activities did not alter Dr. Morris' opinion that plaintiff was disabled. Although these activities might seem inconsistent with a finding of disability, the court cannot substitute its judgment for that of a trained medical professional. The court finds that plaintiff's daily activities do not constitute a specific and legitimate reason, supported by substantial evidence in the record, for disregarding the opinion of Dr. Morris.

"Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion 'as a matter of law.'" *Lester*, 81 F.3d at 834 (9th Cir. 1996) (quoting *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989)). Since the

ALJ has not properly rejected Dr. Morris' opinion, the court credits the opinion of Dr. Morris and finds that plaintiff is disabled.

**2. Plaintiff's May 1992 SSI Application**

Plaintiff argues that "[b]y considering evidence from a prior adjudicated period, the Commissioner de facto reopened Plaintiff's prior application [of May 1992]." Pl.'s Opening Br. at 19. An ALJ de facto reopens a prior adjudication by considering on the merits whether a claimant was disabled during an already-adjudicated period. *Lewis v. Apfel*, 236 F.3d 503, 510 (9th Cir. 2001).

The only reference to the already-adjudicated period was the ALJ's mention of a December 1992 report by Dr. Sidney Cassell. Tr. 870. The ALJ observed that the "uncertain nature of the claimant's physical allegations is exemplified" by Dr. Cassell's report. Tr. 870.

The court concludes that the ALJ did not consider on the merits whether the plaintiff was disabled during the already-adjudicated period. Rather, the ALJ was highlighting that there has been continuous confusion regarding the source of plaintiff's complaints. A brief mention of plaintiff's medical history, in order to contextualize the period following plaintiff's 1998 application for SSI payments, does not mean the ALJ considered on the merits whether plaintiff was disabled since 1992.

The court concludes that there is little merit to plaintiff's argument; the ALJ did not reopen plaintiff's May 1992 application for SSI benefits.

**CONCLUSION**

Given the foregoing, there are no outstanding issues in this matter that require resolution. The court concludes that the record is fully developed and that further administrative proceedings would serve no useful purpose. Under the applicable standards, after giving the evidence in the record the effect required by law, this court finds that plaintiff is unable to engage in any substantial gainful activity by reason of her impairments, and she is disabled under the Act. The final decision of the Commissioner is reversed, and this case is remanded to the Commissioner for the proper calculation and award of SSI benefits to plaintiff Lynne Van.

IT IS SO ORDERED.

DATED this 30 day of September, 2008.

/s/ ANCER L. HAGGERTY
ANCER L. HAGGERTY
United States District Judge